UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMI R. SEAL | CIVIL ACTION |
| VERSUS | NO. 15-7100 |
| SOCIAL SECURITY ADMINISTRATION | SECTION: "A" (4) |

**REPORT AND RECOMMENDATION**

## I.     Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 of the United States Code § 405(g). The Commissioner denied Tami Seal's claim for a Title II application for a period of disability and Disability Insurance Benefits of the Social Security Act, Title 42 United States Code § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) for the submission of Proposed Findings and Recommendations.

## II.    Factual and Procedural Summary

Tami Seal is a fifty-eight-year-old female with a high school education who last worked as a seamstress, legal secretary, substitute teacher and call center supervisor with a disability allegedly beginning on November 1, 2006. R. Doc. 11-3, Tr. 87-104. Seal filed for Disability Insurance Benefits with the Social Security Administration on November 22, 2013. *Id.*  She alleges that she is disabled and unable to work because she suffers from Multiple Sclerosis ("MS"), fibromyalgia, cognitive problems, depression, degenerative disc disease, osteoporosis and diverticulitis. *Id.* at Tr. 87.

On July 3, 2014, the Social Security Administration ("SSA") found that Seal was not disabled. *Id.* at Tr. 87-104.  On August 18, 2014, she filed a request for a hearing with an Administrative Law Judge ("ALJ") in the Social Security Administration's Office of Hearings and

Appeals. R. Doc. 11-4, Tr. 127-28. Administrative Law Judge Thomas G. Henderson conducted a hearing on December 11, 2014 and a supplemental hearing on July 23, 2015 in which he reviewed the SSA's decision to deny Seal's application for a period of disability and Disability Insurance Benefits. R. Doc. 11-2, Tr. 27-78. On September 2, 2015, the ALJ found that Seal was not disabled and not eligible for Supplemental Security Income Benefits. *Id.* at Tr. 6-26. On October 23, 2015, the Appeals Council affirmed the ALJ's determination. *Id.* at Tr. 1-4.

On December 24, 2015, Seal filed the subject complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). R. Doc. 1. Both parties have submitted their briefs for consideration by the Court.[1]

### III. Findings of the Administrative Law Judge ("ALJ")

On September 2, 2015, the ALJ, issued a decision denying Seal's request for a period of disability and Disability Insurance Benefits. R. Doc. 11-2, Tr. 6-26. The ALJ found that Seal was not engaged in substantial gainful activity since November 1, 2006 through her last date of insured of December 31, 2008. *Id.* at Tr. 11. He found that Seal had the following severe impairments: depressive disorder-not otherwise specified, major depressive disorder and obsessive-compulsive disorder. *Id.*

The ALJ further concluded that Seal's impairments or combination of impairments did not equal or meet the requirements of any impairment listed in Appendix I, in 20 CFR Part 404, Subpart B, and Appendix 1. *Id.* at Tr. 14. The ALJ found that through the date of last insured, Seal had the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations of simple, routine, repetitive tasks; no fast paced production work or

---

[1] R. Docs. 14 and 15.

work with quotas and no close coordination with co-workers. *Id.* at Tr. 15. The ALJ found that through the date last insured Seal was unable to perform any past relevant work. *Id.* at Tr. 19.

The ALJ also held that, while Seal is not able to perform any past relevant work, that she is a younger individual according to the regulations who is able to communicate in English and whose job skills transferability is not material to the determination of disability because the Medical Vocational Rules supported a finding that she is not disabled" whether or not she had transferable job skills. *Id.* at Tr. 19. Thereafter, the ALJ found that considering Seal's age, education, work experience and residual functional capacity ("RFC") there were jobs existing in significant numbers in the national economy *Id.* at Tr. 20. The ALJ concluded that Seal has not been under a disability since November 1, 2006, the alleged onset date, through December 31, 2008, the date last insured. *Id.* at Tr. 21.

After Seal's request was denied at the administrative level, she sought review from the Appeals Council who denied her request. *Id.* at Tr. 1-4. On December 24, 2015, Seal filed a complaint in this court challenging the ALJ's decision on several grounds.

1. Whether the ALJ's decision is based upon substantial evidence where he concluded that the allegation of MS was not a medically determinable impairment due to lack of objective medical evidence, failed to considered medical evidence and rejected the treating physician's medical opinion?

2. Whether the ALJ's RFC Assessment is based upon Substantial Evidence?

3. Whether the ALJ's opinion is based upon substantial evidence because he failed to give controlling weight to Seal's treating physician's opinion?

R. Doc. 14, p. 7-13.

The Commissioner filed a reply brief contending that the ALJ's decision is based upon substantial evidence. R. Doc. 15.

## IV.     Standard of Review

The role of this Court on judicial review under Title 42 U. S. C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgement for that of the Secretary. *Allen v. Schweitker,* 642 F.2d 799, 800 (5th Cir. 1981). Review of the Secretary's decision is limited to "whether [her] findings are supported by substantial evidence in the record and whether [she] applied the correct legal standards." *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991). An ALJ`s failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted...for a constructive period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section § 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.  The Regulations governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do any work that exists in the national economy.  *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

If the record contains a medical opinion from a treating physician on the nature and severity of the claimant's impairments, the Commissioner's Regulations dictate that it must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 1527(d)(2); *see also Frey v. Brown*, 816 F.2d 508, 513 (10th Cir. 1987).

The Regulations provide that the ALJ will make a determination based on the available evidence if all evidence received by the ALJ, including medical opinions, is consistent. 20 C.F.R. § 404.1527(c)(1).  The Regulations also contain a general rule that greater weight should be given to the medical opinions of treating sources because they are "more likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments.  20 C.F.R. § 404.1527(d)(2).  However, if a medical opinion issued by a treating physician is not given controlling weight because it is not well-supported or inconsistent with

evidence in the record, then the Court will determine the appropriate weight to give the opinion based on a list of factors found in 20 C.F.R. § 404.1527(d).

In determining how much weight to give a treating physician's report, the ALJ must consider six enumerated factors: (1) the length of treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, 3) the relevant evidence in support of the medical opinion, 4) the consistency of the medical opinions reflected in the record as a whole, 5) whether the medical provider is a specialist in the area in which he renders his opinions, and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Based on the examination of the aforementioned factors, the ALJ must decide how much weight to give the treating physician's opinion.  If the results from multiple factors suggest that the treating physician's opinion should be more closely considered despite its inconsistency or lack of support in the record, great weight should be given to it. *See Mosca v. Massanari*, No. 01-10481, 2002 WL 511522, at *7 (D. Mass. Jan. 30, 2002).  In all situations, the Secretary must give specific, legitimate reasons if the ALJ's decision disregards the treating physician's opinion that a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 758 (10th Cir. 1988).

If the ALJ does not discuss or apply the factors listed in 20 C.F.R. § 404.1527(d), the Court may remand the case for re-evaluation if the ALJ assigned more weight to a non-treating source opinion than to the treating physician's medical opinion of the claimant. *See Mosca,* 2002 WL 511522 at *7 ("[T]he ALJ must consider six [20 C.F.R. § 404.1527(d)] factors"); *c.f. Baker v. Brown*, 886 F.2d 289, 291 (10th Cir. 1989).  In situations where the treating physician's opinion is not given controlling weight, the ALJ must also explain the amount of weight he has assigned to the opinions of State agency medical and psychological consultants. 20 C.F.R. § 404.1527(d)(2).

V.  **Analysis**

   A.  **Whether the ALJ's decision is based upon substantial evidence where he concluded that the allegation of MS was not a medically determinable impairment due to lack of objective medical evidence?**

The plaintiff contends that the medical evidence of record is replete with a number of treating sources concluding that Seal had suspected, possible or atypical MS. R. Doc. 14, p. 7. Seal acknowledges that her markers for MS were not typical but also that her doctors treated her for the suspected MS. She contends that because the doctors treated her for suspected MS the ALJ should have included it in his RFC Assessment because there were non-exertional limitations which included memory loss, dizziness, headaches and depression and physical limitations which included weakness, restriction in range of motion of the upper extremities, tenderness, fatigue, antalgic gait, and tremors. *Id.* at p. 7-8.

The Commissioner contends that the ALJ correctly determined that the plaintiff's alleged MS was not severe. R. Doc. 15, p. 6-9. The Commissioner contends that there was no objective medical evidence establishing that MS was implicitly admitted to by Seal. *Id.*

The ALJ found that MS is not a medically determinable impairment due to a lack of objective evidence. R. Doc. 11-2, Tr. 12. The ALJ noted that while Seal alleged that she was diagnosed with MS in November of 2005 and that she had studies and MRI's that were suggestive of and characterized as "atypical multiple sclerosis," a subsequent lumbar puncture was negative for auto clonal banding or anything consistent with MS *Id.*

The ALJ noted that while Seal reported during inpatient treatment at Our Lady of the Lake Hospital that she might have MS, all of the subsequent diagnostic tests performed to determine if she had MS were negative. *Id.* The ALJ did a complete review of her medical records noting that doctor after doctor evaluated her for MS and concluded that she did not have the disease. *Id.* at Tr. 12-14.

While Seal contends that the ALJ should have concluded that her suspected condition was a severe impairment because she was being treated for MS—although not formally diagnosed with the disease. R. Doc. 14, p. 7-8.  It has not gone unnoticed that Seal has not pointed to a formal diagnosis of MS.

However, Seal does point out that the consultative examiner concluded that she had MS based on his examination of her.  Dr. Rogelio Casama also reviewed the MRI report and found that extreme fatigue and persistent myalgia are indicative of MS.   The Court notes that the ALJ gave little weight to Dr. Casama's opinion because it relied on the history given by Seal which was contrary to findings he noted earlier in the opinion including the MRIs which according to the neurological specialists do not support a diagnosis of MS. Rec. Doc. 11-2, Tr. 13.

Seal also contends that the ALJ erred when he rejected Dr. Tucker's opinion. However, the ALJ rejected Dr. Tucker's opinion because there were no medical records that supported the opinion. *Id.* at Tr. 14.  Second, the ALJ found that Dr. Tucker made a mistake when he concluded that two other doctors supported the diagnosis of MS.  *Id.* The ALJ noted that the doctors at Our Lady of the Lake indicated that there was nothing found in a diagnostic way consistent with MS. Dr. Fischer, a neurologist found that she absolutely did not meet the criteria for MS.  As a result, the ALJ accorded no weight to the opinion of Dr. Tucker. *Id.*

In reviewing the opinions of Drs. Tucker and Casama, the Court notes that both doctors relied solely upon the information provided by Seal.  There is no evidence that either doctor conducted or reviewed the results of diagnostic tests that confirmed the presence of MS. The reasons given for rejecting these opinions appear, on their face, to be valid and acceptable reasons for discounting opinion evidence. 20 C.F.R. §404.1527 (evaluating opinion evidence).

It also does not go unnoticed that Seal has cited no legal authority that would remotely support her position that a suspected condition is sufficient for the classification of "severe impairment." The Court having reviewed the record and the ALJ's opinion finds that the conclusion that Seal suspected "multiple sclerosis" was not a severe impairment is based upon substantial evidence.

### B. Whether the ALJ's Residual Functional Capacity Assessment is based upon Substantial Evidence?

Seal contends that the ALJ's conclusion was not based on substantial evidence where he found that she retained the residual functional capacity to perform the full range of work at all exertional levels and that her non-exertional limitations limited her to simple, routine, repetitive tasks; no fast paced production work or work with quotas; and no close coordination with coworkers. R. Doc. 14, p. 8-11. Seal argues that the ALJ failed to consider any exertional limitations despite the records demonstrating some level of physical limitations. Specifically, Seal contends that Dr. Casama, the consultative examiner noted moderate musculoskeletal tenderness, decreased range of motion in multiple areas, 2/5 weakened grip strength, impaired range of motion in joints and hyperactive superficial and deep tendon reflexes on examination. *Id.* at p. 10 (citing R. Doc. 11-7, pp. 128-32). Seal contend that these limitations should have been recognized in the RFC and was not included.

The Commissioner contends that Dr. Casama's opinion was based only on plaintiff's reported medical history and inconsistent with the rest of the record. R. Doc. 15, p. 9. The Commissioner contends that Dr. Casama's opinion is explicitly based on previous MRIs rather than based on his own observations. The Commissioner points out that Dr. Casama's notes only point to plaintiff's strength, she stated that "she is weak." *Id.* at. 10. As a result, the Commissioner

9

contends that Dr. Casama's opinion is based upon Seal's subjective complaints and his incorrect interpretation of other findings such that the ALJ was entitled to afford less weight to his opinion. *Id.*

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). The ALJ cannot reject a medical opinion without an explanation.   See *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir.1980) ("An administrative law judge may not arbitrarily reject uncontroverted medical testimony."); *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir.1979).  The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has [the] sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).

When good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions includes disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Id.*; see also 20 C.F.R. § 404.1527(c)(2) (emphasis added) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence* in your case record, we will give it controlling weight.").  Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

Pain can impose both exertional and non-exertional limitations on an individual's ability to engage in substantial gainful activity. *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983) Non-exertional limitations include difficulty functioning due to pain. 20 CFR 404.1569a(c)(1). Back pain causes a non-exertional limitation when it requires an individual to alternate periods of sitting and standing because such a requirement limits an individual's ability to perform a full range of sedentary work. *See Scott v. Shalala,* 30 F.3d 33, 34-35(5th Cir. 1994).

The ALJ noted that the internal medicine consultative examination with Dr. Casama took place in September 2007. R. Doc. 11-2, Tr. 13. He also noted that Seal complained of persistent weakness, myalgia, arthralgia, easy fatigability, and that her weakness is most localized over the left side with poor short-term and long-term memory. The ALJ noted her complaints of MS and the fact that she told Dr. Casama that she was taking medications to treat MS. *Id.* He also noted that Dr. Casama conducted a physical examination that show moderate musculoskeletal tenderness and decreased range of motion in the joints with no joint effusion or pedal edema. He also noted Dr. Casama's grip strength of 2/5 with impaired range of motion in the joints and hyperactive superficial and deep tendon reflexes. *Id.*

The record indicates that Dr. Casama conducted a physical examination which included range of motion. In doing so he noted varying degrees of limitations of the cervical thoracolumbar, shoulder, hip, knee, and ankle. R. Doc. 11-7, Tr. 515. Dr. Casama concluded that Seal's range of motion of the cervical and lumbar spine were impaired. *Id.* at Tr. 513. Dr. Casama did conduct a physical examination and noted that there was moderate tenderness over the entire lumbar spine. Straight leg raising was negative on examination. *Id.* He reviewed the X-Rays and MRI's and concluded that they confirmed the presence of cervical and lumbar degenerative disc disease. *Id.*

11

The Court notes that the ALJ stated that he considered and weighed all medical opinions of record in the case and that none of Seal's treating or examining physicians offered an opinion on any functional limitation imposed by her severe impairments. R. Doc. 11-2, Tr. 19.

The ALJ erred when he concluded that Dr. Casama's opinion solely relied on the complaint of Seal.  The record shows and the opinion confirmed that Dr. Casama conducted a physical examination which included a range of motion assessment as reflected on a range of motion chart. For example, the chart written in Dr. Casama's handwriting shows that Seal's forward flexion of the cervical spine was 25 degrees, extension was 30 degrees, lateral extension 45 degrees and rotation was also limited to a  degree to which is hard to read. R. Doc. 11-7, Tr. 515. The record shows that Seal's Thoraco-lumbar spine upon flexion was limited to 45 degrees, extension 10 degrees, lateral flexion 15 degrees and rotation to 15 degrees. *Id.*

In reviewing the opinion regarding the RFC Assessment, the ALJ should have considered the range of motion in her neck, back and shoulder.  Upon reviewing the full medical record, the ALJ would have looked at a November 28, 2005 MRI of the cervical area which indicated that her cervical spine is within normal limits. R. Doc. 11-7, Tr. 401

However, the ALJ would have also looked at the September 20, 2006 MRI of the lumbar spine which revealed that there is desiccation with subtle narrowing and bulging of the L4-5 intervertebral disc of the Lumbar Spine. R. Doc. 11-7, Tr. 403. The MRI also revealed the presence of lumbar facet arthrosis and L4-5 facet tropisim, which is a developmental abnormality of the facet joint facing or orientation, making it a condition that can cause stress and pain.[2]

---

[3]http://www.coxchirocare.com/doctor/chiropractor/chiropractic-Chicago/id-your-pain/tropism

While the ALJ mentions that he considered all of the medical records and noted the presence of degenerative disc disease, he made no mention in the opinion about the limitations in Seal's range of motion.  Further while he concluded that her history was inconsistent with the MRI and X-Rays regarding the lumbar spine, Seal does have a condition that could result in pain which may impact her residual functional capacity.  The opinion is devoid of any reference to the limiting impact of her lumbar arthrosis and tropism.  The Court therefore finds that the ALJ's RFC Assessment is not based on substantial evidence.  The Court does not reach the remaining issue.

**VI.    Recommendation**

It is **RECOMMENDED** that the ALJ's decision denying Tami Seal's Disability Insurance Benefits be **REVERSED and remanded for consideration.  In so doing, the ALJ is directed to consider the impact that lumbar arthrosis and tropism have on Seal's residual functional capacity.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United States Auto Ass`n*, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 3rd day of March 2017

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**